UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



————————————————————————

PICTOMETRY INTERNATIONAL CORP.

                Plaintiff,

    v.

AIR AMERICA FLIGHT CENTER, LLC,

                Defendant.

————————————————————————

AIR AMERICA FLIGHT CENTER, LLC,

                Third-Party Plaintiff,

    v.

EAGLE VIEW TECHNOLOGIES, INC.,
SANDHILLS AVIATION LLC, AND STEVEN W.
SHERWOOD,

                Third-Party Defendants.

————————————————————————

**DECISION AND ORDER**

6:18-CV-6487 EAW

## INTRODUCTION

Plaintiff Pictometry International Corp. ("Pictometry") commenced the instant action on June 29, 2018, asserting claims of breach of contract, anticipatory breach of contract, unjust enrichment, and conversion against Defendant Air America Flight Center, LLC ("Air America"). (Dkt. 1). On September 4, 2018, Air America commenced a separate action against third-party defendants Eagle View Technologies, Inc. ("Eagle View"), Sandhills Aviation LLC ("Sandhills"), and Steven W. Sherwood ("Sherwood"), which was opened as Civil Action No. 18-cv-6637 (the "6637 Action"). Air America also

asserted counterclaims against Pictometry in the instant matter. (Dkt. 59). The parties thereafter consented to consolidation of the instant matter and the 6637 Action (Dkt. 68), and the Court ordered that the matters be consolidated on February 8, 2019 (Dkt. 69).

Currently pending before the Court are Pictometry's motion to dismiss certain of Air America's counterclaims for failure to state a claim (Dkt. 63), Eagle View's identical motion to dismiss certain of the claims asserted in the 6637 Action (6637 Action, Dkt. 17), and Sandhills' and Sherwood's motion to dismiss the Complaint in the 6637 action for lack of jurisdiction and, as to certain claims, for failure to state a claim (6637 Action, Dkt. 16). For the reasons that follow, the Court denies the motions in part and grants them in part. In particular, the Court grants Pictometry's and Eagle View's motions as to Air America's claims under the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") and as to Air America's claims for breach of oral contract. The Court grants Sandhills' and Sherwood's motions as to Air America's FDUTPA claims and as to Air America's claim against Sherwood for aiding and abetting a breach of the duty of loyalty. The motions are denied in all other respects.

## BACKGROUND

### I.  Factual Background

The following facts are taken from Air America's counterclaims in the instant action and the Complaint in the 6637 action. As is required at this stage of the proceedings, the Court treats Air America's allegations as true.

Air America is a Florida-based limited liability company that provides "aircraft fleet management and logistics services for the deployment of aerial imaging equipment."

(6637 Action, Dkt. 1 at ¶¶ 23, 34). Beginning in 2005, Air America entered into a business relationship with Pictometry, which is an aerial imagery company. (*Id.* at ¶ 35). Air America and Pictometry entered into a series of successive contracts known as Air Services Agreements ("ASAs"), pursuant to which Pictometry hired Air America to provide aircraft and manage the logistics necessary to collect aerial images for Pictometry. (*Id.* at ¶ 36). The last ASA between Pictometry and Air America was entered into in September 2015. (*Id.*). In 2013, Pictometry merged with Eagle View. (*Id.* at ¶ 42; Dkt. 59 at ¶ 4). On July 26, 2018, Eagle View announced that it had acquired Spookfish, an Australian technology company. (6637 Action, Dkt. 1 at ¶¶ 46, 49).

Air America hires pilots from around the world to serve as independent contractors. (*Id.* at ¶ 51). Sherwood was hired by Air America as a pilot on October 15, 2008. (*Id.* at ¶ 52). Sherwood served as an independent contractor pilot from October 15, 2008, through October 26, 2009, and then again from April 25, 2011, to January 25, 2012. (*Id.* at ¶ 54). He was assigned to fly aircraft for Pictometry projects and to capture images for Pictometry. (*Id.* at ¶ 53).

On October 8, 2012, Sherwood was hired by Air America as Assistant Director of Business Development. (*Id.* at ¶ 55). In this role, Sherwood oversaw human resources and was responsible for hiring and training pilots. (*Id.* at ¶ 57). Sherwood had significant involvement in Air America's relationship with Pictometry, and he was responsible for "generally maintaining the relationship between Air America and Pictometry." (*Id.* at ¶¶ 57-58). Pictometry was Air America's largest customer, and "Air America placed substantial trust and confidence in Mr. Sherwood to fulfill Pictometry's needs and to

maintain the relationship between Air America and Pictometry." (*Id.* at ¶ 62).

While employed by Air America, Sherwood was "taught Air America's methods for deploying aircraft," including Air America's proprietary method for providing a higher number of reliable flight hours than its competitors. (*Id.* at ¶ 58). Sherwood also became aware of the following confidential Air America information: "(i) internal policies on screening, hiring, training, and managing pilots; (ii) Air America's practices on creating and executing flight routes; (iii) Air America's expertise on managing complicated flight projects and the corresponding maintenance schedules of the Aircraft; (iv) Air America's nationwide rosters of independent contractor pilots and mechanics; and (v) Air America's practices for servicing and maintaining the Pictometry account." (*Id.* at ¶ 63).

While still employed by Air America, Sherwood entered into an agreement with Pictometry and Eagle View to "take the confidential information and methods Mr. Sherwood learned at Air America to start a competing aircraft fleet services vendor for the purpose of diverting revenue and profits away from Air America," through a new company called Sandhills. (*Id.* at ¶ 64). Sherwood resigned from Air America on October 9, 2014, and told Air America his resignation was for "personal reasons." (*Id.* at ¶ 68). However, the true reason was to start a business to compete with Air America, at the direction of Pictometry and Eagle View. (*Id.* at ¶ 69). Indeed, "[a]s late as October 29, 2016, the Sandhills website stated: Sandhills Aviation was founded in May of 2015, as a direct response to a request by Eagleview/Pictometry for the need to bring on additional vendors for the purpose of data acquisition." (*Id.* at ¶ 83 (internal quotation omitted)). Air America reviewed Sherwood's email account and electronically stored information after his

resignation. (*Id*. at ¶¶ 77-78). Air America discovered that Sherwood had deleted all of the emails (including sent emails). (*Id*. at ¶¶ 79-81).

Sherwood attempted to recruit Air America's pilots and personnel to his new business venture. (*Id*. at ¶ 69). For example, Sherwood recruited David Smith ("Smith"), who had worked for Air America as an independent contractor primarily assigned to the Pictometry account, to become a founding member of Sandhills. (*Id*. at ¶¶ 70-74). Sherwood or Smith also recruited Michael Herbert and James Szydlowski, former Air America pilots. (*Id*. at ¶ 76). "Sandhills has been wrongfully using Air America's confidential information and trade secrets since its inception to the present day to compete with Air America." (*Id*. at ¶ 88). Moreover, Sandhills has assumed a significant amount of business with Pictometry that would have otherwise been handled by Air America, causing Air America to lose approximately $190,000 in business per month. (*Id*. at ¶¶ 92-96).

On April 21, 2016, Air America and Pictometry had a meeting at which "Pictometry promised Air America that Air America would be Pictometry's exclusive Air Services provider for projects involving deployment of Spookfish technology." (*Id*. at ¶¶ 98-99). Air America verbally accepted this exclusivity offer and, in reliance thereon, "performed certain tasks for Pictometry without a written contract." (*Id*. at ¶¶ 100-101). In particular, Air America recommended to Pictometry that it use a Piper Aztec aircraft to deploy the Spookfish technology and advised Pictometry and Spookfish personnel regarding the necessary modifications to the aircraft. (*Id*. at ¶¶ 103-105).

In March of 2017, Air America installed a Spookfish technology "pod" on a Piper

Aztec (the "Spookfish Airplane"). (*Id.* at ¶ 107). The installation involved complicated modifications to the aircraft and required approval by the Federal Aviation Administration. (*Id.*). Innov.aero, a company working with Pictometry and Spookfish, documented the procedures for installing the pod on the Spookfish Airplane, which Air America understood was being done to create a manual for future installations. (*Id.* at ¶ 108). "Because Pictometry had promised Air America exclusivity for Spookfish Technology projects, Air America fully understood and believed that the manual was going to be kept confidential and used for future installations of additional Spookfish Pods upon Air America aircraft." (*Id.*). Pictometry was not involved in the installation of the pod onto the Spookfish Airplane. (*Id.* at ¶ 109).

After installation of the pod onto the Spookfish Airplane, Air America and Pictometry conducted a number of test flights, after which Air America remedied mechanical failures in the pod. (*Id.* at ¶ 110). Air America was not involved in installing Spookfish pods onto any other aircrafts. (*Id.* at ¶ 111).

In 2017, Air America became aware that Pictometry had deployed up to 10 additional Spookfish pods onto other aircraft, using vendors other than Air America. (*Id.*). Pictometry and Sandhills have installed a Spookfish pod on one of Sandhills' airplanes, using the methodology devised by Air America. (*Id.* at ¶¶ 112-113).

Beginning in late 2017, Air America and Pictometry negotiated over the return of the pod installed on the Spookfish Airplane. (Dkt. 59 at ¶ 23). Pictometry deliberately and wrongfully dragged out these negotiations, which forced Air America to house the Spookfish Airplane and prevented Air America from flying the Spookfish Airplane for 10

months. (*Id.* at ¶¶ 23-24).

Based on the foregoing allegations, Air America sets forth the following claims against all defendants: misappropriation of trade secrets pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (the "DTSA") (Dkt. 59 at ¶¶ 136-148; 6637 Action, Dkt. 1 at ¶¶ 116-128)[1]; common law misappropriation of trade secrets (Dkt. 59 at ¶¶ 149-159; 6637 Action, Dkt. 1 at ¶¶ 129-138); violation of FDUTPA (Dkt. 59 at ¶¶ 183-188; 6637 Action, Dkt. 1 at ¶¶ 166-171); and aiding and abetting breach of the duty of loyalty (Dkt. 59 at ¶¶ 168-174; 6637 Action, Dkt. 1 at ¶¶ 144-150). Air America has further alleged the following claims as to one or more defendant: breach of contract as to Pictometry (Dkt. 59 at ¶¶ 160-167; 189-198); quantum meruit as to Pictometry (Dkt. 59 at ¶¶ 199-206); aiding and abetting breach of fiduciary duty as to Pictometry, Eagle View, and Sandhills (Dkt. 59 at ¶¶ 175-182; 6637 Action, Dkt. 1 at ¶¶ 158-165); breach of duty of loyalty as to Sherwood (6637, Dkt. 1 at ¶¶ 139-43); and breach of fiduciary duty as to Sherwood (6637 Action, Dkt. 1 at ¶¶ 151-157).

## II.  Procedural Background

On June 29, 2018, Pictometry commenced the instant action against Air America. (Dkt. 1). Pictometry filed a motion for a preliminary injunction (Dkt. 5), which was ultimately resolved by stipulated order agreed upon by Pictometry and Air America (Dkt. 41).

---

[1]  Air America refers to the DTSA as appearing at 18 U.S.C. § 1831. (*See, e.g.,* Dkt. 59 at 26). However, § 1831 defines the crime of economic espionage, while the DTSA's civil provisions appear at § 1836 *et seq.* This typographical error does not change the Court's consideration of Air America's claims.

Pictometry filed an amended complaint on July 16, 2018 (Dkt. 17), which Air America answered on August 13, 2019 (Dkt. 44). Air America filed its Amended Answer with Counterclaims on September 4, 2018. (Dkt. 59). Air America also commenced the 6637 Action against Eagle View, Sandhills, and Sherwood on September 4, 2018. (6637 Action, Dkt. 1).

On October 17, 2018, Pictometry filed a motion seeking to dismiss the following counterclaims against it: breach of FDUTPA; breach of oral contract; aiding and abetting a breach of fiduciary duty; and aiding and abetting a breach of the duty of loyalty. (Dkt. 63). That same day, Eagle View, Sandhills, and Sherwood filed their motions to dismiss in the 6637 Action. (6637 Action, Dkt 16; 6637 Action, Dkt. 17). Eagle View seeks dismissal of the same claims as Pictometry—namely, breach of FDUTPA; breach of oral contract; aiding and abetting a breach of fiduciary duty; and aiding and abetting a breach of the duty of loyalty. (*Id.*, Dkt. 17).

Sandhills and Sherwood seek dismissal of all claims against them, based on an alleged lack of personal jurisdiction. (*Id.*, Dkt. 16). In the alternative, Sherwood seeks dismissal as to him of Air America's misappropriation of trade secrets claims and Sandhills and Sherwood seek dismissal of Air America's breach of fiduciary duty, breach of the duty of loyalty, aiding and abetting a breach of fiduciary duty, aiding and abetting a breach of the duty of loyalty, and FDUTPA claims in their entirety. (*Id.*, Dkt. 16 at 14)[2].

Air America filed opposition papers to the pending motions to dismiss on November

---

[2]     Page references are to those generated by the Court's CM/ECF system.

16, 2018. (Dkt. 64; 6637 Action, Dkt. 19; 6637 Action, Dkt. 20). Reply papers were filed on November 30, 2018. (Dkt. 65; 6637 Action, Dkt. 23; 6637 Action, Dkt. 24).

On February 8, 2019, pursuant to the stipulation of the parties, the Court ordered consolidation of the instant action and the 6637 Action. (Dkt. 68; Dkt. 69).

Oral argument on the pending motions was held on July 30, 2019, and the Court reserved decision. (Dkt. 86).

## DISCUSSION

**I.      Sandhills' and Sherwood's Motion to Dismiss for Lack of Personal Jurisdiction**

The Court considers first Sandhills' and Sherwood's motion to dismiss for lack of personal jurisdiction. Sandhills and Sherwood, who are a Nebraska-based LLC and a Nebraska resident and domiciliary, respectively, argue that Air America has failed to set forth a *prima facie* basis for this Court to exercise personal jurisdiction over them. (6637 Action, Dkt. 16-1 at 8-11). Air America argues that the Court has both general and specific jurisdiction over Sandhills and Sherwood. (*Id.*, Dkt. 20 at 11-23). In the alternative, Air America asks the Court to either order jurisdictional discovery or transfer the matter to Florida. (*Id.* at 23-24).

For the reasons discussed below, the Court finds that, at this stage of the proceedings, Air America's allegations are sufficient to make out a *prima facie* showing of personal jurisdiction over Sandhills and Sherwood. Accordingly, Sandhills' and Sherwood's motion to dismiss is denied to the extent it is based on lack of personal jurisdiction. Air America's alternative requests for jurisdictional discovery or to transfer the matter to Florida are denied as moot.

## A.    Legal Standard

In federal court, upon challenge by the defendant, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990). The Second Circuit has explained:

> [T]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.

*Id.* at 197.

"In general, a 'district court's personal jurisdiction is determined by the law of the state in which the court is located.'" *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 219 (W.D.N.Y. 2012) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)); *see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) ("A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over the defendants."). "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to [New York Civil Practice Law and Rules ("CPLR") 301] . . . or specific jurisdiction pursuant to [CPLR 302]." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court

to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "If personal jurisdiction exists under the forum state's laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements." *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, No. 06-CV-70S, 2007 WL 894217, at *3 (W.D.N.Y. Mar. 21, 2007).

## B. General Jurisdiction

"New York's general jurisdiction statute allows a court to 'exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.'" *Polaz v. Bowers Trucking, LLC*, No. 18-CV-527 (ARR) (SJB), 2018 WL 1413454, at *3 (E.D.N.Y. Mar. 20, 2018) (quoting CPLR 301). The Supreme Court has held that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation omitted); *see Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("*Daimler* established that, except in a truly 'exceptional' case, a corporate

defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases.").[3]

"Similarly, as it relates to individuals, the new inquiry focuses on whether the defendant may fairly be regarded as 'at home' in the forum state—a location which, according to the Second Circuit, is generally limited to that individual's domicile." *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 519 (E.D.N.Y. 2017) (citing *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014)). "In fact, an individual's domicile in New York has become something of a *sine qua non* for exercising all-purpose jurisdiction here." *Id.* (collecting cases).

Before the Supreme Court's decisions in *Goodyear* and *Daimler*, it was well established that, under CPLR 301, "a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000). In order for general jurisdiction to apply under this standard, the plaintiff was required to demonstrate that the foreign corporation did "business in New York not occasionally or casually, but with a fair measure of permanence and continuity," such that the defendant "engaged in continuous, permanent, and substantial activity in New York." *Id.* (quotation marks and citations omitted).

---

[3]     Sandhills is a limited liability company, and not a corporation. However, courts in this Circuit apply the same general jurisdiction analysis to both corporations and limited liability companies. *See, e.g., Spratley v. FCA US LLC*, No. 3:17-CV-0062(MAD)(DEP), 2017 WL 4023348, at *3 (N.D.N.Y. Sept. 12, 2017); *Philpot v. Kos Media LLC*, No. 16-CV-01523, 2017 WL 2270248, at *6 (S.D.N.Y. Apr. 21, 2017), *report and recommendation adopted*, 2017 WL 2269531 (S.D.N.Y. May 23, 2017); *Bonkowski v. HP Hood LLC*, No. 15-CV-4956, 2016 WL 4536868, at *2 (E.D.N.Y. Aug. 30, 2016).

"The Supreme Court's . . . decision in *Daimler AG v. Bauman* has brought uncertainty to [the] application of New York's 'doing business' rule. As a result, it is unclear whether existing New York general jurisdiction jurisprudence remains viable." *Reich v. Lopez*, 38 F. Supp. 3d 436, 454-55 (S.D.N.Y. 2014) (citing *Sonera Holding B.V.*, 750 F.3d at 225 n.2 ("[W]e note some tension between *Daimler*'s 'at home' requirement and New York's 'doing business' test. . . .")), *aff'd* 858 F.3d 55 (2d Cir. 2017); *cf. Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 16-cv-35, 2016 WL 7174646, at *4 (D. Vt. Dec. 7, 2016) ("The Supreme Court's decision in [*Daimler*] changed the law of general jurisdiction, making it substantially more difficult to establish that type of personal jurisdiction."); *Hood v. Ascent Med. Corp.*, 13-cv-0628 (RWS) (DF), 2016 WL 1366920, at *8 (S.D.N.Y. Mar. 3, 2016) ("In the recent cases of *Daimler* and *Goodyear*, the Supreme Court made clear that the constitutional standard for finding a corporation to be essentially at home in a foreign jurisdiction is a stringent one, and that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." (internal quotations omitted)), *report and recommendation adopted*, 13 Civ. 628 (RWS), 2016 WL 3453656 (S.D.N.Y. June 20, 2016). Although "*Goodyear* seemed to have left open the possibility that contacts of substance, deliberately undertaken and of some duration, could place a corporation 'at home' in many locations[, *Daimler*] . . . considerably altered the analytic landscape for general jurisdiction and left little room for these arguments." *Brown*, 814 F.3d at 629.

"Since *Daimler*, the Second Circuit has avoided reinterpreting CPLR § 301, a state statute." *Reich*, 38 F. Supp. 3d at 455 n.4 (citing cases). Instead, the Second Circuit has

made clear that "[t]he paradigm forum for general jurisdiction over an individual is the individual's domicile, his home," and that "[f]or a corporation, it is . . . the place of incorporation and the principle place of business. . . ." *Sonera Holding B.V.*, 750 F.3d at 225.

Air America argues that this Court can exercise general jurisdiction over Sandhills and Sherwood. However, Air America has offered no substantive basis for finding that Sherwood, an individual who resides in and is domiciled in Nebraska, is subject to general jurisdiction in New York. Accordingly, Air America has not made a *prima facie* showing of general jurisdiction as to Sherwood.

With respect to Sandhills, Air America argues that it has asserted that Sandhills derives nearly 100% of its business and revenues from "activities in New York," and that this allegation, accepted as true, renders Sandhills essentially "at home" in this state. (6637 Action, Dkt. 20 at 23). However, Air America's argument is unsupported by its more specific factual allegations, which demonstrate only that Pictometry is Sandhills' most significant (or perhaps only) client, and not that the services Sandhills performs for Pictometry are primarily performed in New York. The fact that Sandhills allegedly performs services both outside of New York and inside New York for a New York-based corporation, and that this is the source of most of its revenues, does not render this the "truly exceptional case" in which a company can be found "at home" in a state where it was not formed and does not have its principal place of business. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quoting *Brown*, 814 F.3d at 629)); *see also Biro v. Nast*, No. 11 CIV. 4442 JPO, 2012 WL 3262770, at *4 (S.D.N.Y. Aug. 10, 2012)

(explaining that even under the traditional "doing business" test for general jurisdiction, "the solicitation of business alone, without more, by an out-of-state defendant is insufficient to find a corporate presence within the state," and that to support an exercise of personal jurisdiction, a party must "engage[] in other activities of substance in the state") (quotation omitted)). Here, taken in the light most favorable to Air America, the allegations support the conclusion that Sandhills' primary customer was a New York-based corporation. That, without more, is not sufficient to establish general jurisdiction under the test enunciated in *Daimler*.

For the foregoing reasons, the Court agrees with Sandhills and Sherwood that Air America has failed to establish a *prima facie* basis for the exercise of general jurisdiction by this Court.

## C. Specific Jurisdiction

Air America also argues that the Court has specific jurisdiction over Sandhills and Sherwood pursuant to CPLR 302(a)(1), "because Defendants (i) transact business within New York and (ii) Air America's claims arise from those transactions." (6637 Action, Dkt. 20 at 12). CPLR 302(a), "New York's long-arm statute, confers specific jurisdiction over a non-domiciliary defendant arising out of particular acts." *Reich*, 38 F. Supp. 3d at 457 (citation and quotation omitted). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines*, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (quotations and alteration omitted).

Sandhills and Sherwood argue that Air America's allegations are insufficient to establish specific jurisdiction under CPLR 302(a)(1) because (1) Air America has not alleged that Sherwood transacts business in New York and (2) Air America's claims do not arise from Sandhills' business with Pictometry. (6637 Action, Dkt. 23 at 6-9). The Court is unpersuaded by these arguments.

Considering first Sherwood's argument that Air America has failed to allege that he transacted business in New York, it is well-established that CPLR 302(a) "also confers jurisdiction over individual corporate officers who supervise and control an infringing activity." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) (applying analysis to principal and operator of an LLC); *see also Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 328 (S.D.N.Y. 2015) ("For purposes of section 302(a)(1), the Court may attribute the acts of a corporation to individual defendants under an agency theory where (1) the corporation engages in purposeful activity in the forum state that relates to the transaction underlying the lawsuit, (2) the corporation's activity was taken for the benefit of and with the knowledge and consent of the defendant, and (3) the defendant exercised some control over the purposeful activity."). Here, Air America has alleged that Sherwood is a managing member of Sandhills and that he formed Sandhills and then provided Sandhills with access to the confidential information that he misappropriated from Air America, which Sandhills (at Sherwood's direction) then used to perform services for Pictometry, including services within New York State. At this stage of the proceedings, the Court finds these allegations sufficient to establish a *prima facie* case that, for purposes of CPLR 302(a)(1), Sandhills' actions may be attributed to Sherwood.

Turning next to Sandhills' and Sherwood's argument that Air America's claims do not arise from Sandhills' transaction of business with Pictometry, "[c]ourts making this inquiry assess whether there is an articulable nexus between the business transaction and the cause of action or, put differently, a substantial relationship between the transaction and the claim asserted." *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 177 (S.D.N.Y. 2014) (quotations omitted). "The court must determine the issue of personal jurisdiction separately for each cause of action asserted in the plaintiff's complaint." *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1155 (S.D.N.Y. 1996). Accordingly, the Court has assessed whether each of Air America's claims against Sandhills and Sherwood have the requisite relationship to Sandhills' business relationship with Pictometry.

With respect to Air America's claims based on the alleged misappropriation of trade secrets, the reasonable inference from Air America's allegations is that Sherwood conspired with Pictometry to steal Air America's trade secrets, and that Sherwood, through Sandhills, then used those trade secrets to perform services for Pictometry, including services in New York. For example, Air America has made allegations that Sandhills, using the misappropriated trade secrets, captures aerial images for Pictometry and then sends the aerial images and data captured for Pictometry to Pictometry's offices in New York. (*See* 6637 Action, Dkt. 20-1). More specifically, Air America alleges that Sandhills, as a Pictometry air service vendor, is required to either remotely transfer the data it captures to Rochester or to "physically ship[] the hard drives back to Pictometry in Rochester via an overnight courier like Federal Express." (*Id.* at ¶ 8). Air America further alleges that Pictometry's air services vendors (including Sandhills) are in frequent contact and

communication with Pictometry's Rochester-based management team, and that Sandhills' aircraft fly through Rochester on a regular basis, either for repairs or to work with Pictometry personnel to troubleshoot the equipment. (*Id.* at ¶¶ 9, 13). These facts, accepted as true, are sufficient to articulate a clear nexus between the claims (misappropriation of trade secrets) and Sandhills' business with Pictometry in New York.

At oral argument, counsel for Sandhills and Sherwood contended that the Court should, in conducting its personal jurisdiction analysis, not accept Air America's allegation that Sherwood misappropriated trade secrets. In particular, Sandhills and Sherwood argue that Air America's specific factual allegations reveal that, at most, Sherwood took unprotectable "know how" with him when he resigned, and that as such, there is no question that his business with Pictometry was proper and lawful. The Court is not persuaded by this argument.

The Court notes initially that none of the Defendants have sought dismissal of Air America's trade secret misappropriation claims on this basis—that is, no Defendant has argued that Air America has failed to allege the existence of a protectable trade secret and therefore cannot maintain a claim for misappropriation of trade secrets. Moreover, such an argument would not likely be successful at this stage of the litigation.

Under the DTSA, a trade secret includes "all forms and types of information that derives independent economic value from not being generally known and that the owner of which took reasonable measures to keep secret." *AUA Private Equity Partners, LLC v. Soto*, No. 1:17-CV-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (quotation and alterations omitted). Similarly, New York law defines a trade secret as "any

pattern, formula, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," while Florida law defines a trade secret as information that "(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *7 (S.D.N.Y. Dec. 5, 2016) (citations and quotations omitted).[4]

The Second Circuit has never "expressly required trade secrets to be identified with any particular degree of specificity," in a pleading, but courts in this Circuit have held that "a vague and indefinite piece of information cannot be protected as a trade secret." *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017) (quotation omitted). In this case, Air America has identified specific information that it contends are trade secrets misappropriated by Sherwood, including Air America's policies and procedures for screening and training pilots, information about how Air America creates and executes its flight paths, the identities of Air America's independent contractor pilots and mechanics, and Air America's internal aircraft maintenance schedules. (*See* 6637 Action, Dkt. 1 at ¶ 63). At this stage of the proceedings, the Court cannot say as a matter of law that these

---

[4]    The parties have not briefed whether New York law or Florida law governs the misappropriation of trade secrets claim. However, the Court need not resolve the issue at this time, because no matter what law applies, Air America has sufficiently alleged the existence of a trade secret.

identified alleged trade secrets amount to nothing more than general "know how" that Sherwood was free to take with him upon resignation from Air America.

The Court further notes that the cases Sandhills and Sherwood cite in their papers in support of their lack of jurisdiction argument are inapposite. In *Sterling Television Presentations, Inc. v. Shintron Co.*, 454 F. Supp. 183 (S.D.N.Y. 1978), the court found no personal jurisdiction as to the claim for misappropriation of trade secrets because the trade secrets had allegedly been "used in the manufacture of [the defendant's] product, in its factory in Massachusetts." *Id.* at 188. In this case, unlike in *Shintron*, the allegations before the Court indicate that Sandhills and Sherwood used the misappropriated information in New York (and elsewhere), in order to provide services for Pictometry that were comparable to those provided by Air America.

Similarly, in *Interface Biomedical Labs. Corp. v. Axiom Med., Inc.*, 600 F. Supp. 731 (E.D.N.Y. 1985), the court found that personal jurisdiction did not exist under CPLR 302(a)(1), because all contact with New York occurred prior to the misappropriation and "did not cause or further the alleged misappropriation of intellectual property rights." *Id.* at 737; *see also Xedit Corp. v. Harvel Indus. Corp., Fidelipac*, 456 F. Supp. 725, 729 (S.D.N.Y. 1978) (finding no personal jurisdiction over misappropriation of trade secrets claim based on meetings in New York that did not "cause[] or further[] the alleged misappropriation except to the extent that it was a link in the chain of events leading to the claim for which relief is sought," and explaining that "[t]he defendants' New York activities must be substantially proximate to the allegedly unlawful acts before the cause of action can be said to arise out of those activities"). By contrast, in this case, there were

allegedly ongoing contacts with New York after the misappropriation in which the wrongfully obtained information was used.

It is a necessary element of a trade secret misappropriation claim in New York that the defendant had "used [the] trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (quotation omitted and emphasis added). The DTSA and Florida law impose similar requirements. *See, e.g., DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 847 (11th Cir. 2016) (noting that under Florida law, misappropriation consists of either "[d]isclosure or use of a trade secret of another" without consent where such a trade secret was gathered by improper means, or the knowing acquisition of a trade secret from someone who acquired it using improper means (quotation omitted)); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) ("Misappropriation is defined within DTSA as an unconsented disclosure or use of a trade secret. . . ." (quotation omitted)). In other words, under the applicable laws, an employee's misappropriation of a trade secret is not complete until the trade secret is wrongfully disclosed or used. Here, the use is alleged to have occurred during Sandhills' performance of services for Pictometry. Under these circumstances, the Court finds a *prima facie* basis for specific jurisdiction pursuant to CPLR 302(a)(1).

A similar analysis applies to Air America's claims for breach of fiduciary duty and breach of the duty of loyalty. The elements of these claims are discussed further below, but the gravamen of Air America's breach of duty claims is that the alleged theft and use

of Air America's confidential and proprietary information constituted a breach of Sherwood's duties to Air America, and that Sandhills aided and abetted the breaches by using the stolen information in serving Pictometry. Again, there is a clear nexus between these claims and Sandhills' alleged relationship with Pictometry in New York, which was developed and directed by Sherwood.

*Barrett v. Tema Development (1988), Inc.*, 251 F. App'x 698 (2d Cir. 2007), cited by Sandhills and Sherwood, is not relevant. In *Barrett*, the alleged breach of fiduciary duty involved a contract that was "neither negotiated nor executed in New York," and the subject matter of which was a real estate transaction in Massachusetts. *Id.* at 700. The sole connection to New York was that the plaintiff claimed to have made communications from New York and to have had a brief conversation with the defendant's principal in New York about the contract. *Id.* Here, as discussed above, the contacts with New York were far more extensive and were specifically related to the alleged breaches (that is, the theft and subsequent use of Air America's confidential information).

Finally, Air America's FDUTPA claims also arise from the alleged theft and use of Air America's confidential information. Accordingly, the same analysis that leads the Court to find a *prima facie* basis for specific jurisdiction as to the previously-assessed claims applies with equal force.

For the foregoing reasons, the Court concludes that there is a *prima facie* basis for the exercise of personal jurisdiction over Sandhills and Sherwood under CPLR 302(a)(1).

**D.    Due Process Concerns**

"If personal jurisdiction exists under the forum state's laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements." *Gaymar Indus.*, 2007 WL 894217, at *3 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). Pursuant to such requirements, "a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State," and such contacts "must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (quotations omitted).

The Court finds these standards met here. As discussed above, Sandhills is alleged to have engaged in ongoing, substantial business with Pictometry in New York, and that business is directly related to the claims at issue in this litigation. Similarly, Sherwood, as a managing member of Sandhills, is alleged to have provided confidential, misappropriated information to Sandhills and directed its use in connection with the performance of services for Pictometry in New York. Accordingly, the Court finds, at this stage of the proceedings, that its exercise of personal jurisdiction over Sandhills and Sherwood comports with federal due process requirements. *See Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 732 F.3d 161, 170 (2d Cir. 2013) ("It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing

business in the forum and to have been able to foresee being haled into court there, or the assertion of specific jurisdiction would somehow otherwise offend traditional notions of fair play and substantial justice." (citations and quotations omitted)); *see also Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 27 (E.D.N.Y. 2016) ("[G]iven the Court's prior determination that § 302(a)(1) permits the exercise of jurisdiction over Defendant, it would be unusual, and even unprecedented, for the Court to find that due process is not satisfied here.").

## II.  Motions to Dismiss for Failure to State a Claim

### A.  Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [party asserting the claim]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant's] obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the . . . '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 313 (S.D.N.Y. 2014) (quotation omitted).

### B.    Breach of Oral Contract

Air America has asserted a counterclaim for breach of an oral contract against Pictometry, which Pictometry seeks to have dismissed. (*See* Dkt. 63-1 at 19-20). In its response to Pictometry's motion, Air America has indicated that it withdraws this claim. (*See* 6637 Action, Dkt. 19 at 7 n.1). Accordingly, the Court grants Pictometry's motion to dismiss with respect to Air America's counterclaim for breach of an oral contract.

### C.    Breach of Duty Claims

Defendants seek dismissal of Air America's claims and counterclaims for breach of fiduciary duty, breach of the duty of loyalty, and aiding and abetting said breaches. Initially, the Court notes that Air America has clarified that it was inadvertent for the claim for aiding and abetting a breach of the duty of loyalty to be asserted against Sherwood. (*See* 6637 Action, Dkt. 20 at 26 n.5 ("Air America's Fourth Cause of Action for Aiding

and Abetting a breach of the duty of loyalty was not intended to be asserted against Sherwood. Sherwood's name was inadvertently included in the parenthetical beneath the heading for the Fourth Cause of Action.")). As such, to the extent Sherwood seeks dismissal of the aiding and abetting a breach of the duty of loyalty, his request is granted.

### 1. Choice of Law

As a threshold matter, the Court notes that Air America has relied upon both Florida law and New York law in arguing in support of its breach of duty claims. (*See* 6637 Action, Dkt. 16-1 at 25-27). The Court must determine which state's law governs. When, as is the case here, "a plaintiff brings a federal claim with pendent state law claims, a district court must first determine whether to apply federal or state choice-of-law principles." *Turner v. Boyle*, 116 F. Supp. 3d 58, 74 (D. Conn. 2015). The Court applies the forum state's choice of law rules unless there is "a significant conflict between federal policy or interest and the use of state law." *Id.* (quotation omitted). No such conflict exits here, and so the Court applies New York's choice of law rules. *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989) ("A federal court . . . adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state.").

"New York law provides that the laws of the jurisdiction that govern a foreign limited liability partnership shall determine its internal affairs[.]" *Grewal v. Cuneo*, No. 13-CV-6836 RA, 2015 WL 4103660, at *5 (S.D.N.Y. July 7, 2015). Moreover, "New York applies the internal affairs doctrine to claims for breach of fiduciary duty[.]" *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011) (applying Delaware law to breach of fiduciary duty claim asserted by a Delaware LLC); *cf. Aquent*

*LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1350 (M.D. Fla. 2014) ("Fiduciary duties are considered the internal affairs of LLCs."). The Court therefore finds that Florida law is properly applied to these claims, inasmuch as Air America was formed under the laws of Florida, and the alleged breach is of Sherwood's duty to Air America.

### 2. Breach of Fiduciary Duty and Duty of Loyalty

Pictometry and Eagle View argue that they cannot be held liable for aiding and abetting Sherwood's alleged breach of fiduciary duty because "Air America has not adequately alleged an underlying breach of fiduciary duty." (Dkt. 63-1 at 20). Specifically, they argue that Air America's allegations do not support the conclusion that Sherwood, while employed by Air America, either misused confidential information or solicited Air America personnel. (Dkt. 63-1 at 20-23). Pictometry and Eagle View further contend that under Florida law, the elements of a claim for breach of fiduciary duty and breach of duty of loyalty are the same. (*Id.* at 23).[5]

Sandhills and Sherwood join in Pictometry and Eagle View's arguments. (6637 Action, Dkt. 16-1 at 11-12). Sandhills further argues that it cannot have aided and abetted in any breach by Sherwood, because it did not exist until after Sherwood terminated his employment with Air America. (*Id.* at 12-13).

"Under Florida law, the elements of a claim for aiding and abetting breach of fiduciary duty are: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor[;] and

---

[5]     As the Court clarified on the record at the oral argument held on July 30, 2019, Defendants have not sought dismissal of either of these claims as duplicative of the other.

(4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Aquent*, 65 F. Supp. 3d at 1350 (quotation omitted). "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1286 (M.D. Fla. 2009) (quoting *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)). The same elements are applied in assessing whether there has been a breach of the duty of loyalty. *See Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).

The Court finds that, contrary to Defendants' arguments, the allegations against Sherwood amount to far more than merely preparing to compete with a former employer. Air America's claims, taken as true, establish that Sherwood deliberately entered into an agreement to misappropriate his employer's confidential trade secrets and then used that ill-gotten information to form a competing business. Further, Air America alleges that Sherwood solicited Smith to work for his competing business and that Smith was one of the original managing members of Sandhills. (*See e.g.,* Dkt. 59 at ¶ 63).

The Court is not persuaded, for the reasons discussed above regarding Sandhills' and Sherwood's personal jurisdiction arguments, by the contention that Sherwood's alleged actions amounted to no more than preparing to compete with Air America using "know how" obtained in the course of his employment. Sherwood is expressly alleged to have taken confidential information and trade secrets from Air America. Although Pictometry and Eagle View contend that "Air America alleges that Mr. Sherwood took the [confidential Air America] information after he left Air America," (Dkt 63-1 at 22), this is

not consistent with Air America's claims.  Air America contends that Sherwood **used** the information after he left Air America's employment, not that he took the information at that time.  (*See e.g.,* Dkt. 59 at ¶ 63 (alleging that Sherwood gathered the confidential information while still employed by Air America), ¶ 85 (alleging that Sandhills is using the confidential information in providing services to Pictometry)).[6]

*Bank of Am., N.A. v. Crawford*, No. 2:12-CV-691-FTM-38CM, 2014 WL 12616934 (M.D. Fla. May 1, 2014) does not stand for the proposition that an employee may take his employer's confidential information so long as he does not use it until after his employment has terminated.  The statement in *Crawford* that an "employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment," *id.* at *5, was addressing specifically pre-termination conduct.  Defendants have cited no cases that hold that pre-termination taking of trade secrets, coupled with post-termination use thereof, is insufficient to constitute a breach of fiduciary duty.  *See Keen v. Bovie Med. Corp.*, No. 8:12-CV-305-T-24-EAJ, 2013 WL 1899791, at *15 (M.D. Fla. May 7, 2013) (denying summary judgment on claim for breach of fiduciary duty based on alleged post-termination theft of information on external hard

---

[6]    As Air America clarified at oral argument, the breach of fiduciary duty claim is unrelated to the technology used in the Spookfish Airplane, which was admittedly not developed until after Sherwood's employment with Air America ended.  Air America's allegations regarding its confidential information extend beyond the Spookfish Airplane and, as discussed above, at this stage of the proceedings and on the current record, cannot be considered unprotectable "know how."

drive where the moving party "assert[ed]—with no legal authority—that no fiduciary duty exists after termination").

For similar reasons, the Court rejects Sandhills' argument that it cannot be held liable for having aided and abetted Sherwood's breach of duty because it was not formed until after he resigned from Air America. Air America has plausibly alleged that the breach of fiduciary duty began while Sherwood was employed, and that the wrongful conduct continued thereafter. Sandhills allegedly knew that Air America's confidential information had been wrongfully obtained by Sherwood, in breach of his fiduciary duties to Air America, and nonetheless used that information in performing services for Pictometry. These allegations are sufficient, at this stage of the proceedings, to permit Air America's aiding and abetting claims to proceed as to Sandhills.

Moreover, reading Air America's allegations in the light most favorable to it, and drawing all inferences in Air America's favor, Air America has plausibly alleged that Sherwood solicited Smith while still employed by Air America. (*See* Dkt. 59 at ¶¶ 63, 66-71). While Air America has not set forth a particular date on which the solicitation occurred, that level of specificity is not required at this stage of the proceedings. Accordingly, Air America's allegation that Sherwood solicited Smith while they both were still employed by Air America is an additional basis for finding a plausible claim for breach of fiduciary duty.

For all these reasons, the Court finds that Air America has plausibly alleged that Sherwood breached his fiduciary duty to Air America. The Court accordingly denies Defendants' motion to dismiss with respect to the breach of duty claims.

## D.    FDUTPA Claims

The Court turns next to Air America's claims under FDUTPA. Pictometry and Eagle View contend that Air America lacks standing to bring an action under FDUTPA because Air America is not a consumer and has not engaged in a consumer transaction. (6637 Action, Dkt. 24 at 6-7). Pictometry and Eagle View further argue that Air America has alleged only consequential damages and has not alleged direct causation. (*Id.* at 7-10). Sandhills and Sherwood join in these arguments. (6637 Action, Dkt. 16-1 at 11). For the reasons discussed below, the Court finds that Air America has not alleged a facially plausible FDUTPA claim.

"The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) prohibits 'unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 626 (11th Cir. 2015) (alteration omitted and quoting Fla. Stat. § 501.204(1)). To state a claim under FDUTPA, a party must allege the following elements: (1) a deceptive action or unfair trade practice; (2) causation; and (3) actual damages. *Id.* The "express purpose of FDUTPA is '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296 (S.D. Fla. 2014) (quoting Fla. Stat. § 501.202(2)).

FDUTPA creates a private cause of action for "a person who has suffered a loss as a result of a violation of [the statute's provisions]." Fla. Stat. § 501.211(2). "The Florida

Legislature, in 2001, amended § 501.211(2) by replacing the word 'consumer' with the word 'person.'" *Carroll v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *3 (S.D. Fla. May 6, 2014). "Florida courts have interpreted this amendment as expanding the class of plaintiffs eligible to bring claims for damages under § 501.211(2) beyond consumers." *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 317CV00686MCRCJK, 2018 WL 7351689, at *6 (N.D. Fla. Sept. 27, 2018). However, "[w]hile the 2001 amendment expanded the class of plaintiffs eligible to bring an action for damages, it did not modify the requirement that the plaintiff allege facts plausibly suggesting *consumer injury or detriment* in order to state a claim." *Id.* (emphasis in original).

The Court agrees with Air America that it is not prohibited from bringing an FDUTPA claim simply because it is not a consumer. *See Chiron Recovery Ctr., LLC v. AmeriHealth Hmo of New Jersey, Inc.*, No. 9:16-CV-82043, 2017 WL 4390169, at *6 (S.D. Fla. Oct. 3, 2017) ("The Court aligns itself with the line of cases finding that non-consumers have standing under FDUTPA. Despite the existence of a split in the federal district courts, the state appellate courts that have ruled on the issue have determined that non-consumers have standing under FDUTPA."). Similarly, the fact that Air America did not engage in a "consumer transaction" with Defendants does not prohibit it from asserting a claim under FDUTPA. *See, e.g., Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1146 (M.D. Fla. 2007) ("After the amendments to the FDUTPA, courts have opined on several occasions that actions under the statute could be sustained absent

the failure to allege that FDUTPA violation arose from a consumer transaction." (quotation omitted)).

At oral argument, counsel for Pictometry and Eagle View cited a recent decision by the New York State Supreme Court, Appellate Division, First Department, in which the court concluded that "only 'consumers' have standing to bring a claim under Florida's Deceptive and Unfair Trade Practices Act." *Tall Tower Capital, LLC v. Stonepeak Partners LP*, No. 652447/18, 2019 WL 2932119, at *1 (1st Dep't July 9, 2019). However, the *Tall Tower* court did not perform any analysis of this issue, and simply relied on Florida district court decisions that did not take into account the Florida state appellate court cases interpreting the 2001 FDUTPA amendments. *See id.* The *Tall Tower* decision therefore does not change the Court's conclusion that Air America's status as a non-consumer does not mean it is *per se* barred from asserting a claim under FDUTPA.

However, as the court noted in *Sandshaker Lounge*, the fact that a non-consumer such as Air America may now commence an action under FDUTPA does not change the fundamental requirement that an FDUTPA claimant plausibly allege injury or detriment to a consumer. 2018 WL 7351689, at *6; *see also CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) ("That an entity other than a consumer can bring a FDUTPA claim does not mean, however, that harm to consumers is not required." (quotation and alteration omitted)). *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164 (Fla. Dist. Ct. App. 2015), a decision from an intermediate Florida appellate court, is on point. In *Caribbean Cruise Line*, the court explained that after the 2001

amendments, while "the claimant *does not have to be a consumer* to bring" an FDUTPA claim, "the claimant would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim." *Id.* at 169 (emphasis in original). The *Caribbean Cruise Line* court explained that the requirement of consumer harm follows directly from the Florida Supreme Court's "definitions of 'unfair practice' and 'deception' in conjunction with the first element" of an FDUTPA claim, both of which require injury (or potential injury) to consumers. *Id.* (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). The Court finds this reasoning persuasive and, in the absence of any contrary authority from the Florida Supreme Court, holds that even though a non-consumer who has not itself engaged in a consumer transaction may assert a claim under FDUTPA, it is still necessary that the alleged deceptive action or unfair trade practice pose a risk of injury or harm to consumers. *See CEMEX Construction*, 2018 WL 905752, at * 15 ("[T]he Court, which is bound to follow the law as set forth in *Caribbean Cruise Line*, concludes that [the claimant] must allege consumer injury for its FDUTPA claim to survive dismissal.").

Here, Air America has not alleged injury (or potential injury) to any entity other than itself, and it does not contend that it is a consumer or was acting as a consumer. Accordingly, the Court finds that Air America has not stated a viable FDUTPA claim.

*B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, No. 16-62364-CIV, 2017 WL 8751753 (S.D. Fla. Feb. 10, 2017), cited by Air America, is not to the contrary. While the *B&D Nutritional* court did indeed hold that "[b]usinesses may bring claims under FDUTPA against competitors or those who misappropriate confidential or

proprietary information or trade secrets," *id.* at \*3, nothing in that decision suggests that such misappropriation need not have caused consumer harm. To the contrary, no party in *B&D Nutritional* appears to have argued the issue of consumer harm.

### E. Sherwood's Liability for Sandhills' Actions

Finally, Sherwood seeks dismissal of Air America's misappropriation of trade secrets claims and FDUTPA claims against him, arguing that under Nebraska law, he cannot be held liable for wrongful actions taken by Sandhills. (6637 Action, Dkt. 16-1 at 13-14).

This argument fails on its face, because Sherwood is specifically alleged to have engaged in wrongful acts in his own capacity. In particular, Sherwood is alleged to have stolen confidential and proprietary trade secrets from Air America and to have then given those trade secrets to Sandhills, for Sandhills to use in servicing Pictometry at Sherwood's direction. The Court agrees with Air America that Sherwood cannot use the subsequent formation of Sandhills as a shield with respect to his own alleged unlawful conduct. *Cf. T.V.D.B. Sarl v. Kapla USA, LP*, No. 4:12-CV-230, 2013 WL 12155481, at \*3 (S.D. Ga. Sept. 16, 2013) ("[A]n individual who becomes a member and manager of a limited liability company may not retroactively claim a corporate shield for acts committed prior to becoming a member.").

## III. Request for Leave to Amend

Air America has included in a footnote in its opposition papers a cursory request that "[t]o the extent the Court believes that any of Air America's claims are improperly pleaded," it be granted "an opportunity to replead and cure any deficiencies that the Court

may identify." (*See* Dkt. 64 at 8 n.2). This "request is not a proper motion for leave to amend, and fails to comply with the Local Rules of Civil Procedure with respect to the process for seeking to amend a pleading." *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014) (explaining that, among other things, the Court's Local Rules require the party seeking to amend a pleading to "identify the proposed amendments through the use of a word processing red-line function or other similar markings" (quotations omitted)). The Court therefore exercises its discretion to deny this "cursory or boilerplate request[] . . ., made solely in a memorandum in opposition to a motion to dismiss." *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009). However, the Court will dismiss Air America's FDUTPA's claims without prejudice to the filing of a procedurally proper motion for leave to amend.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Pictometry's motion to dismiss certain of Air America's counterclaims (Dkt. 63), Eagle View's identical motion to dismiss certain of the claims asserted in the 6637 Action (6637 Action, Dkt. 17), and Sandhills' and Sherwood's motion to dismiss for lack of jurisdiction and for failure to state a claim (6637 Action, Dkt. 16). Specifically, the Court grants Pictometry's and Eagle View's motions as to Air America's claims under FDUTPA and as to Air America's claims for breach of oral contract. The Court grants Sandhills' and Sherwood's motions as to Air America's FDUTPA claims and as to Air America's claim against Sherwood for aiding and abetting a breach of the duty of loyalty. The Court denies

the motions in all other respects. The dismissal of Air America's FDUTPA claims is without prejudice to the filing of a procedurally proper motion for leave to amend.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: August 20, 2019
        Rochester, New York